# Mary A. Poundstone, Devisee of George W. Poundstone, Appellant, *v.* Eliza J. Jones.

*Ejectment—Evidence—Husband and wife—Fraud.*

In an action of ejectment by the sheriff's vendee of land sold as the property of a deceased husband against the decedent's wife, the wife testified that prior to her marriage her husband gave her a large sum of money, and that immediately after her marriage she loaned the money to her husband. No demand was made by her for repayment afterwards. She had no separate estate apart from this money. About eight years after the marriage the husband became insolvent and made an assignment for creditors. Prior to the assignment he conveyed a house to his brother-in-law, and no mention was made of this house in the deed of assignment. The evidence showed this conveyance was for the purpose of concealing the property from creditors. Three years after the assignment the husband directed that a deed should be made to his wife for the property. The wife contended that the conveyance was in payment of the loan which she had made to her husband. *Held,* that the entire evidence of all of the facts above stated was relevant and significant, as bearing upon the bona fides of the wife's title, and that it was all for the jury.

In an action of ejectment against a wife by the sheriff's vendee of land sold as the property of a deceased husband, where the wife claimed the property in controversy as having been purchased with her own money, the defendant requested the court to charge " that the evidence in the case is not of that full, clear and rigid character necessary to sustain the defendant's claim, and the verdict should be for the plaintiff." The court

answered the point as follows: "This is refused. The question is a question of fact to be determined by you." *Held*, that the answer was erroneous, as the jury had a right to definite instructions upon the sufficiency of the evidence to justify its submission to them.

Argued May 11, 1897. Appeal, No. 135, Jan. T., 1897, by plaintiff, from judgment of C. P. Fayette Co., Sept. T., 1889, No. 59, on verdict for defendant. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment for a lot of land in the borough of Bridgeport. Before SLAGLE, J., of the fifth judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

At the trial defendant offered in evidence record of deed from George Swearer and wife to Eliza Jones, dated February 27, 1879, acknowledged same day and recorded for the purpose of showing title in Eliza J. Jones to a lot of land that was conveyed to Ephraim H. Bar, as part of the consideration for the land in controversy, and showing thereby, that that part of the consideration was paid by her separate property, the deed having been recorded February 22, 1882.

Plaintiff objected to that unless it be followed by testimony that that property was purchased by her own money, or obtained from sources outside of the husband.

The Court: Well, it is admitted as one link in the evidence. [1]

An article of agreement having been offered in evidence in which it appeared that the parties thereto were Eliza J. Jones and Ephraim H. Bar, but the agreement being signed by George W. Jones, also, defendant offered to show by the testimony of Robert McKinley, that Jones refused to sign the paper, until the justice told him that Mrs. Jones being a married woman, couldn't sign the agreement alone.

Plaintiff objected that the offer is incompetent and irrelevant.

The Court: The objection is overruled and bill sealed. [2]

Plaintiff offered to prove by defendant's vendor that defendant's husband had negotiated the sale with him for the property. An objection to its competency was sustained and bill sealed for plaintiff. [7]

Plaintiff offered to prove that defendant's health was such as to permit her to attend court.

Objected to.

The Court: This would only be applicable to the admission of the notes of her testimony, and that matter having been passed upon, it is irrelevant, and the testimony is irrelevant. Objection sustained and bill sealed. [8]

Defendant's point and answer thereto were as follows:

2. That the evidence in the case is not of that full, clear and rigid character necessary to sustain the defendant's claim, and the verdict should be for the plaintiff. *Answer:* This is refused. [9]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1, 2, 7, 8) rulings on evidence, quoting the bill of exceptions; (9) above instruction, quoting it.

*Edward Campbell,* for appellant.

The presumption of law that the money was a gift to her husband shall prevail, and the wife cannot reclaim either principal or interest, against her husband's creditors: Kerr's App., 104 Pa. 282; Weitzel v. Kepner, 37 Leg. Int. 474; Lyle's Est., 11 Phila. 64; Hause v. Gilger, 52 Pa. 412; Hamill's App., 88 Pa. 363; Endlich & Richards on Married Women, sec. 216; Johnson v. Johnson, 31 Pa. 450; Bardsley's Est., 13 Phila. 222; Wormley's Est., 137 Pa. 101; Mellinger v. Bausman, 45 Pa. 522; May v. May, 62 Pa. 206; Topley v. Topley, 31 Pa. 328; Young v. Senft, 153 Pa. 352.

The manifest, not to say monstrous, improbability of the defendant's testimony is of itself sufficient to deprive it of the character of " high, satisfactory and rigid proof," so often declared by this Court to be the only evidence adequate to sustain the claim of a wife against creditors of her husband, in a case like the present: Bollinger v. Gallagher, 170 Pa. 84; Aurand v. Schaffer, 43 Pa. 363; Winter v. Walter, 37 Pa. 162; Barinerg v. Stiver, 49 Pa. 129; Tripner v. Abrahams, 47 Pa. 220; Sawtelle's Appeal, 84 Pa. 306; Conley v. Bentley, 87 Pa. 46; Wilson v. Silkman, 97 Pa. 509; Lochman v. Brobst, 102 Pa. 486; Pier v. Siegel, 107 Pa. 502; Adams v. Bleakley, 117 Pa. 283; Duncan v. Sherman, 121 Pa. 520; Steckman v. Schell, 130 Pa. 1.

As a general rule, where husband and wife are in the joint

possession or occupancy of personal or real estate, the law presumes the property to belong to the husband, and this presumption continues until the wife shows that she acquired it by means not derived from her husband, and the burden of proof that she so acquired it is upon her: Caldwell v. Walters, 18 Pa. 79; Glyde v. Keister, 32 Pa. 85; Keiper v. Helfricker, 42 Pa. 325; Steinman v. Ewing, 43 Pa. 63; Schlosser's Appeal, 58 Pa. 493; Quinn's Appeal, 6 Pa. 447; Keeney v. Good, 21 Pa. 349; Auble v. Mason, 35 Pa. 261; Hallowell v. Horter, 35 Pa. 375; Robinson v. Wallace, 39 Pa. 129; Jack v. Kintz, 177 Pa. 571; Gamber v. Gamber, 18 Pa. 363; Walker v. Reamy, 36 Pa. 410; Baringer v. Stiver, 49 Pa. 129; Bollinger v. Gallagher, 170 Pa. 84.

*D. M. Hertzog,* for appellee.—Mrs. Jones was a competent witness: Young v. Senft, 153 Pa. 352; Rowley v. McHugh, 66 Pa. 269; Royer v. Borough of Ephrata, 171 Pa. 429.

Where a married woman has known property of her own, the credit founded upon it, or the products arising from it, are protected from her husband's creditors: Conrad v. Shomo, 44 Pa. 193; Sober v. Standart, 110 Pa. 47; Silveus's Exrs. v. Porter, 74 Pa. 451; Campe v. Horne, 158 Pa. 508.

OPINION BY MR. JUSTICE WILLIAMS, October 11, 1897:

This action involves an inquiry into the title to real estate in Bridgeport, Fayette county. The plaintiff in the court below, who is also the appellant in this court, claims to own the property by virtue of a purchase at sheriff's sale made upon a judgment against George W. Jones. The defendant, who was the wife of Jones, and living with him on the property at the time the judgment against him was entered, denies that he had at any time any title whatever to the land, and asserts that she was the owner of it in her own right, holding it as her separate property. At the trial the plaintiff showed possession and cultivation by Jones, the recovery of the judgment against him, and the sheriff's sale made thereunder, together with the sheriff's deed under which she claimed. This made a case upon which she was entitled, prima facie, to a judgment against Jones and all persons in possession under him. It then became the duty of the defendant to overcome the prima facies of this showing

by establishing a right to the possession not derived from her husband, nor bound by the judgment against him. This she sought to do by making proof of a purchase by herself of the property in controversy from Ephriam H. Bar, for $5,500, and the payment of the purchase money by her out of her separate estate. The plaintiff replied that Mrs. Jones never had any separate estate; that the purchase was negotiated by Jones, and the payments made by him while he lived; and that the title was put in Mrs. Jones to keep the property out of the reach of his creditors. The controversy thus settled down over the bona fides of the purchase by the defendant. Was she the real purchaser, buying with her own separate estate? Or was her husband the real purchaser, and the use of her name a device to keep the property away from her husband's creditors? The evidence showed clearly that the wife was without any separate estate at the time of her engagement to Jones. She testified, however, that a few months before the marriage he gave her $2,350 in paper money as a present, and subsequently supplied her with $100 more for the purchase of her wedding outfit. The larger sum she says she counted and put in a trunk in her room, where it remained till after the wedding. She then loaned it to her husband, without note or other evidence of the debt, and, for eleven years afterwards, and until the purchase of the property now in controversy, it does not seem to have been mentioned by either of them. The marriage was in 1868. In 1876 Jones became insolvent. He owned at that time a house and lot in which as the evidence indicates, he was living. He made a sale of this house and lot to a brother of his wife, for $2,000, taking the note of the purchaser, Thomas J. Swearer, for the purchase money. The understanding was that Swearer did not want the house, and was neither to pay for or use it, but to hold the title for the benefit of Jones. Soon after this deed to his brother-in-law, Jones made a general assignment for the benefit of his creditors, in which this house did not appear. Three years later, Jones surrendered the note to Swearer, and had him make a deed for the property to Eliza Jones, his wife. He was evidently in no position to hold the title himself, although he had been the actual owner of it all the time. This house and lot was turned over to Bar for $2,000, in payment of hand money due on the property sold by him to Mrs. Jones. Her

contention is that the conveyance to her by Swearer in 1879 was a payment of $2,000 by her husband to her upon the alleged loan made by her to him in 1868, and that the transfer of this house to Bar as part payment for the property bought of him was a payment by her out of her separate estate, so acquired from Jones before the marriage. It is true that if Mrs. Jones was in good faith the purchaser of the Bar property, and made the advance payment of $2,000 out of her separate estate, she acquired such a title as would enable her to defend her possession in this action of ejectment. On the other hand if this was a purchase by Jones who used his wife's name for the purpose of putting the property beyond the reach of his creditors she has no title. The sale, or pretended sale, by Jones and wife to Swearer was clearly a fraud. The ostensible purchaser never paid a farthing of the purchase money, nor was he desired or expected to do so. The house continued the property of Jones as fully after the fraudulent conveyance to Swearer as it had been before. Its conveyance to Mrs. Jones was at the request of her husband, and was in no sense in pursuance of a purchase by her from her brother. It was in effect a gift by Jones to his wife, made at the date of the deed to her, and at a time when he was insolvent, unless he was honestly indebted to her, as she alleges, for borrowed money. In that event it may be regarded as a sale by him to her in consideration of a debt that does not seem to have been recognized as such by him at the time of his assignment, or to have been asserted by her as a claim upon the assigned estate, so far as we can learn from the evidence. The legal effect of the transaction is precisely the same as if Jones had made the deed for the house and lot directly to his wife. Her title is neither better nor worse for the intervention of her brother between her husband and herself, because he had no interest at any time in the property. That remained the property of her husband until the deed was made at his direction to her, by his fraudulent grantee. His declarations made at any time during his ownership as to the extent of his interest therein, and his purpose in making the deed to Swearer, or directing the deed to be made by him to his wife, were certainly competent on the trial of this action.

The position of the plaintiff was that the whole transaction relied on by the defendant was fraudulent, having been devised

and executed for the purpose of hindering and defeating creditors; that Mrs. Jones had been used by her husband as an instrument for transferring the title to one who might be a purchaser for value and without notice; that the contract with Bar had been negotiated by Jones as a purchaser, and that the deed from Mrs. Jones to him was made in pursuance of this contract, and as the payment of hand money called for by it. There was evidence before the jury from which the truth of this reply to the title of Mrs. Jones might well have been found. The evident insolvency of Jones when the sale to Swearer was made, the fact that the sale was without consideration, the fact that the house and lot, though belonging to Jones, were not put in the deed of assignment for the benefit of his creditors; that after the proceeding in insolvency Jones surrendered the unpaid note to his brother-in-law and directed the conveyance of the house and lot to his wife; that he negotiated the bargain with Bar, and used the house and lot for the first payment thereon; that he made the second payment of $1,000, and that Mrs. Jones was without any separate estate whatever unless she acquired it from Jones just before her marriage were all of them relevant and significant circumstances bearing upon the bona fides of her title. The jury was entitled to them all. The ninth assignment of error also requires some consideration. The learned judge was asked to instruct the jury that the evidence in this case on the part of the defendant was not "of that full, clear and rigid character necessary to sustain the defendant's claim, and the verdict should be for the plaintiff." The answer made to this request was "this is refused. The question is a question of fact to be determined by you." It was the duty of the learned judge to deny or affirm the legal proposition embodied in the point. The jury had a right to a definite instruction upon the sufficiency of the evidence to justify its submission to them. The answer under consideration refused the instruction asked for because "the question (raised by the point) is a question of fact to be determined by you (the jury)." This could hardly have been intended. The question whether the evidence was so clear, full and satisfactory as to justify its submission to the jury was a question of law for the decision of the court. If it did not meet this test the jury had nothing whatever to do with it. It was not before them. If it did,

then the court would submit it to them for consideration with suitable instructions, and they would pass upon it, as upon the other evidence in the case, determining both its credibility and its weight.

If the answer was intended as a denial of the point and a submission of the question of fact raised by it to the jury it was unfortunate in the language employed, and calculated to mislead the jury as to their own duties in the case.   It was in effect an intimation that the evidence in support of Mrs. Jones' title to the land was as "full, clear and rigid" as was necessary, not merely to submit to the jury, but "to sustain the defendant's claim;" and that, while this was so in the judgment of the court, the question was one wholly for the decision of the jury. This left to the jury the standard of proof required by law, and the conformity of the evidence in this case to that standard. This was error.   Whether the evidence in support of Mrs. Jones' title, which was her own story, uncorroborated in any important particular is so clear, full and satisfactory as to be entitled to submission to the jury it will be the duty of the court to declare. If submitted, it should be with careful instructions calling attention to the circumstances that bear upon her credibility and tend to impeach the good faith of her title.

The first, second and eighth assignments are not sustained. The seventh is sustained.   The ninth has been sufficiently commented upon.   The judgment is now reversed, and a venire facias de novo awarded.